[No. A030244. First Dist., Div. Five. Nov. 5, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES LEONARD STEVENS, Defendant and Appellant.

[No. A033139. First Dist., Div. Five. Nov. 5, 1986.]

In re JAMES LEONARD STEVENS on Habeas Corpus.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to rule 976.1 of the California Rules of Court, the portion of the opinion certified for publication follows.
*Assigned by the Chairperson of the Judicial Council.

COUNSEL

Penelope M. Cooper and Cooper & Arguedas for Defendant and Appellant and Petitioner.

John K. Van de Kamp, Attorney General, Martin S. Kaye and Ronald S. Matthias, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**KING, J.**—Defendant James Stevens appeals following his conviction of one count of attempted receipt of stolen property. (Pen. Code, §§ 496, 664.) He also seeks a writ of habeas corpus based on the alleged ineffectiveness of his trial counsel. (James Leonard Stevens, on habeas corpus (A033139).)[1] We affirm the judgment and deny the petition for habeas corpus.

Defendant was the owner of the "Gold Mountain Exchange," a store located in a Concord shopping center where used merchandise was bought and sold. During the spring of 1981, the Concord Police Department embarked on an undercover operation and enlisted the services of undercover Officer Lou Montgomery of the Vallejo Police Department. It was decided Montgomery would enter the Gold Mountain Exchange and attempt to sell property to defendant, while indicating in some manner the property was stolen.

On May 12, 1981, Montgomery was outfitted with a concealed recording device and given various items of jewelry, coins and flatware for possible sale to the Gold Mountain Exchange. Defendant indicated he did not want the flatware, but agreed to purchase the other items for $102. Montgomery picked up one of the rings, pointed out it had engraving inside, and indicated

---

[1]This court consolidated the appeal and petition for habeas corpus. (Order, May 9, 1986, Low, P. J.)

defendant might not want to display the ring. Defendant nodded affirmatively. It was defendant's practice to submit daily reports to the police identifying secondhand property purchased by the Gold Mountain Exchange. Defendant filled out the receipt form, (a copy of which would go to the police) omitting several of the items purchased and misidentifying Montgomery, a Black male, as White.

On May 14, 1981, Montgomery returned to the store with several items, including a lady's watch, two charm bracelets and a jade ring. He was again "wired" for sound. In discussing the items with defendant, Montgomery pointed out the ring had the name "Larry" stamped in it. He went on to indicate this ring came from around the Concord area but "the rest of the stuff was ripped off from the Bay Area." Defendant nodded affirmatively. The items were purchased for $220. Once again, Montgomery was misidentified as White on the receipt form, several items were inaccurately described, and the ring was omitted entirely.

Two counts of attempted receipt of stolen property were tried before a jury commencing November 6, 1984. The jury acquitted defendant of the count arising from the events of May 12, 1981, but convicted defendant of attempting to receive stolen property on or about May 14, 1981. Defendant received the upper term of 18 months in prison.

Defendant launches a multifaceted attack on the court's instruction given on the statutory presumption of guilty knowledge embodied in Penal Code section 496. This section applies to every person "whose principal business is dealing in or collecting used or secondhand merchandise." If such person purchases property "under such circumstances as should cause such person ... to make reasonable inquiry" he is "presumed to have bought or received such property knowing it to have been so stolen or obtained." (Pen. Code, § 496, subd. 2.)

Defendant first contends this instruction should not have been given because the record "provides no basis for the trial court's preliminary determination that sufficient evidence existed to support a finding that [defendant] was a secondhand dealer." To the contrary, the jury had before them several descriptions of the secondhand merchandise displayed in defendant's store, photographs of the store's interior, as well as a photograph of the sign on the store's front door indicating the type of secondhand merchandise purchased by the Gold Mountain Exchange. There was sufficient evidence from which a jury could infer defendant was a secondhand dealer within the meaning of Penal Code section 496.

Defendant next argues, in light of the trial court's finding there was insufficient evidence to classify defendant as a "secondhand dealer" as

defined in section 21626 of the Business and Professions Code, it was error to submit to the jury the question of whether he was a "secondhand dealer" for purposes of the presumption set out in Penal Code section 496. Section 21626 of the Business and Professions Code subjects an individual to second-hand property reporting requirements if the person's "principal business is primarily" dealing in secondhand property or if the person's business does 20 percent or more of its gross sales and purchases in secondhand property. The statutory presumption of guilty knowledge set out in Penal Code section 496 applies to persons "whose principal business is dealing in or collecting used or secondhand merchandise." In essence, defendant argues it was the legislative intent to adopt the statutory definition of "secondhand dealers" set out in the Business and Professions Code into the statutory presumption set out by Penal Code section 496. Nothing in the language of Penal Code section 496 supports this argument.

The only reference to the Business and Professions Code to be found in Penal Code section 496 appears in a 1980 amendment. By that amendment, the Legislature included "swap meet vendor[s] *as defined in section 21661 of the Business and Professions Code*" into the class of individuals presumed to have guilty knowledge when purchasing stolen property under circumstances calling for reasonable inquiry. (Italics added.) It is assumed the Legislature had existing laws in mind when it passed the amendment, yet it did not adopt by specific reference the Business and Professions Code's definition of "secondhand dealer." (See *People* v. *Weidert* (1985) 39 Cal.3d 836, 844 [218 Cal.Rptr. 52, 705 P.2d 380]; *Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 977-978, fn. 10 [140 Cal.Rptr. 669, 568 P.2d 394].) On the contrary, the 1980 amendment reenacted without change the language bringing persons "whose principal business is dealing in or collecting used or secondhand merchandise" within the statute's purview.

It cannot be argued that the omission of the Business and Professions Code's definition of secondhand dealers from Penal Code section 496 was an oversight. ■ "It is a well recognized principle of statutory construction that when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded." (*Ford Motor Co.* v. *County of Tulare* (1983) 145 Cal.App.3d 688, 691 [193 Cal.Rptr. 511].) Moreover, in construing a statute, "a court cannot insert qualifying provisions not included or rewrite the statute to conform to an assumed intention which does not appear from its language." (*Loney* v. *Superior Court* (1984) 160 Cal.App.3d 719, 722 [206 Cal.Rptr. 769]; see also *People* v. *Gopal* (1985) 171 Cal.App.3d 524, 537 [217 Cal.Rptr. 587].) ■ In short, if the Legislature had intended to amend the statutory presumption set out in Penal Code section 496 to apply to secondhand dealers "as defined in Business and Professions Code section 21626" it could have said so.

Accordingly, we conclude that it properly let the jury determine whether the presumption of guilty knowledge applicable to secondhand dealers in Penal Code section 496 should apply.

■ We also reject defendant's contention that Penal Code section 496 is unconstitutionally vague. " '. . . All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden.' " (*People* v. *Superior Court (Hartway)* (1977) 19 Cal.3d 338, 345 [138 Cal.Rptr. 66, 562 P.2d 1315], quoting *Rose* v. *Locke* (1975) 423 U.S. 48, 49-50 [46 L.Ed.2d 185, 188, 96 S.Ct. 243].) "All presumptions and intendments favor the validity of a statute, and it will be upheld unless its unconstitutionality clearly, positively and unmistakably appears." (*People* v. *Gonda* (1982) 138 Cal.App.3d 774, 780 [188 Cal.Rptr. 295].) We believe the language applying the statutory presumption to those "whose principal business is dealing in" secondhand merchandise meets the constitutional standard of clarity.

■ Defendant next argues, in light of the California Supreme Court's decision in *People* v. *Roder* (1983) 33 Cal.3d 491 [189 Cal.Rptr. 501, 658 P.2d 1302] that the trial court committed constitutional error in instructing the jury on the statutory presumption of guilty knowledge embodied in Penal Code section 496. In the instant case, the trial court was familiar with the *Roder* decision and tailored the instruction so it authorized only a permissive inference, not a mandatory presumption.[2] The court also emphasized "it remains the People's burden of proof to prove every element of the offense beyond a reasonable doubt. . . ." We find no error.

. . . . . . . . . . . . . . . . . . . .*

The judgment is affirmed, and the petition for habeas corpus is denied.

Low, P. J., and Sabraw, J.,* concurred.

Haning J., deeming himself disqualified, did not participate.

---

[2]In essence the court instructed the jury that it "*may* infer that the defendant attempted to buy or receive [stolen] property believing it to have been stolen" if the jury found defendant was a secondhand dealer who failed to make reasonable inquiry when obtaining stolen property under suspicious circumstances. (Italics added.)

*See footnote, *ante,* page 1020.

*Assigned by the Chairperson of the Judicial Council.